C. ORVILLE LEE, Appellee, v. BOARD OF SUPERVISORS OF SAC COUNTY et al., Appellants.

DRAINS: Assessments—Departing from Adopted Plan. A general plan 1 (apparently acquiesced in) to assess to each section or division into which the work is divided the entire cost peculiar thereto, should be adhered to, and one section should not be so assessed and in addition thereto be also assessed for part of the cost of the work in another section from which the assessed section derives no benefit.

DRAINS: Assessments—Unauthorized Reduction. Record reviewed, 2 and held insufficient to justify a reduction in assessment on the

ground that the authorities were mistaken in the amount of land classified as "swamp."

*Appeal from Sac District Court.*—E. G. ALBERT, Judge.

## MAY 6, 1924.

ON appeal to the district court from an order by the board of supervisors levying an assessment on plaintiff's lands in a drainage district, the assessment was reduced. From the decree reducing the assessment, the board of supervisors and the district appeal.—*Modified and affirmed.*

*Elwood & Tourgee* and *Jacobs & McCaulley,* for appellants.

*R. L. McCord* and *George H. Mayne,* for appellee.

VERMILION, J.—The appellee, Lee, appealed to the district court from the action of the board of supervisors of Sac County in levying certain assessments on lands belonging to him, and lying within the boundaries of Drainage District

1. DRAINS: assessments: departing from adopted plan.

No. 71 in that county. The court below reduced the assessments, and from this decree the board of supervisors and the drainage district appeal.

The district in question comprises some 18,000 acres, and the main drain is over 13 miles long. An old open ditch extended through the greater part of the district, having been constructed in what was known as Drainage District No. 5. The present district was divided into four sections. Section 1 included the greater part of the district, and extended from a point below the outlet of the old ditch to a point short of its upper end. The work done in Section 1 consisted in a new open ditch from the outlet of the old ditch to the new outlet, and the clearing out and deepening of the old ditch. Section 2 included the remainder of the old ditch, and in this large tile was laid. Section 3 covered new tile lines above the tile laid in the old ditch. Section 4, in which lies the land of appellee, comprised an area served by a tile drain that had its outlet in the deepened old ditch, some three and a half or four miles above the outlet of the district. It thus appears that all of the work outside of Section

4 was above the outlet of Section 4, except the cleaning out and deepening of the old ditch below such outlet and the new work between the end of the old ditch and the new outlet.

One half of the cost of the tile laid in the old ditch in Section 2 was paid by the owners of the land through which it was laid, and the other half was apportioned and put on all the land in the district, including that in Section 4. The portion of this that was put on the lands in Section 4 was added to the cost of the tiling laid in Section 4, and included in the assessment for tiling that was put upon plaintiff's land.

The method of apportioning the tiling assessment among the different tracts was one usually followed, and is not questioned. The lands were classified as swamp, wet, low, or high. Swamp land was given a percentage of 100, wet lands 60, low lands 20, and high lands 5. A factor of proximity was determined for each 40-acre tract. A tract through which the drain was constructed was given a factor of 100, and others were given factors in smaller amounts, depending on their distance from the improvement and the length of the drain necessary to reach it. The product of the number of acres of each class of land in each 40-acre tract with these factors gave a result considered as points; and the sum of these points for the district or section, divided into the cost of the improvement, after deducting the amounts assessed against railways and highways, produced a ratio which, when applied to the points on a given tract, gave as a result the assessment for tiling upon that tract. In addition to this, an assessment for outlet was made on account of deepening the old ditch and extending it in Section 1. For the district as a whole, the ratio of this assessment for outlet was determined as 70 cents per point.

All of the cost of the tiling in Section 4 and a proportionate amount of half the cost of the tile laid in Section 2 was, according to the above method, spread over the lands in Section 4. It thus appears that the lands in Section 4 were assessed for a portion of the cost of tiling laid in land upstream from them, while none of the cost of tiling in Section 4 was put upon land outside that section. The lands in Section 4 were given the assessment of 70 cents per point for outlet and an additional 30 cents per point, on the theory that the deepening of the old ditch and the

extension to a new outlet were, in considerable measure, made necessary to afford adequate drainage to Section 4.

The trial court was of the opinion that this 30-cent additional assessment for outlet was excessive, and that it should not have exceeded 10 cents, and that the lands in Section 4 should not have been assessed for the tiling in Section 2, while bearing the entire cost of the tiling in Section 4. With these conclusions we agree. The extent to which the deepening of the old ditch was required to take care of the drainage water from Section 4, and the proportion of the cost of that work that should, for that reason, be assessed to the lands in that section, in excess of the assessment put upon the other lands in the district on that account, were questions to be determined from the evidence. The record is such in that respect that we have no disposition to interfere with the conclusion of the trial court.

The assessment was, in a measure, made by sections. No question of the right or propriety of so doing is raised. The entire cost of the work done in Section 4 was assessed against the lands in that section. Since such method was followed in that respect, we do not see any reason to question the conclusion of the court below that it should also have been followed, so far as that section was concerned, in assessing the cost of work done in another section upstream, from which the lands in Section 4 received no benefit. The only benefit accruing to the lands in Section 4 from the work done in Section 2, suggested in argument, is that the expense of upkeep, which it is assumed will be laid upon the entire district, will be less than in the case of the open ditch. The territory in Section 4 was not within the old District No. 5, and any liability on its part to contribute to the upkeep of the drain in Section 2 can arise only by reason of the establishment of the new district. The same argument would, it seems to us, have justified the spreading of the cost of the improvement in Sections 3 and 4 over the entire district. As said, the validity of the method of assessment adopted is not in question. All that we are to be understood as holding is that, a method of assessment by districts having been adopted, a holding by the lower court that it should not be departed from to the prejudice of land in one section will not be disturbed.

We are unable to see, however, that the findings in these

respects justify the 20 per cent reduction made in the entire assessment in question. The reduction of 20 cents per point in the outlet assessment does not affect the assessment for tile. The elimination from the latter of the amount assessed to pay for the tiling in Section 2 does not affect the apportionment of the cost of the improvement made in Section 4 upon the lands in that section. The apportionment of the latter upon the several tracts was made in the manner pointed out; and, while it is claimed by appellee that the total assessment against particular 40-acre tracts belonging to him is inequitable, as compared with other like tracts in the section, this contention is based solely upon the classification of the land. He urges that the amount of land in the four 40-acre tracts involved in this appeal designated as swamp land was excessive, and that the reduction made by the lower court can be sustained on that basis.

2. DRAINS: assessments: unauthorized reduction.

One assessment on the district was set aside, and new commissioners appointed. These commissioners seem to have made a very painstaking and careful examination of the lands. Subsequent to the filing of the last report, a survey was made of the lands of appellee, to determine the elevations. This resurvey showed a larger proportion of swamp lands than was reported by the commissioners. We are of the opinion that no such error in the classification made by the commissioners and confirmed by the board of supervisors is shown as to justify any reduction in appellee's assessment on that ground, and that the reduction made by the court below, in excess of that for the matters mentioned, cannot be sustained.

It seems to be agreed by counsel that the reduction of the assessment for outlet from $1.00 per point to 80 cents would work a reduction in the amount of the total assessment on the appellee's land of $302, and that the portion of the cost of tiling laid in Section 2 assessed to appellee's land amounted to $257. By these amounts, the assessment made by the commissioners should have been reduced, but not otherwise. Appellee's lands were, therefore, properly subject to an assessment of $5,773. From this should be deducted $810.20, the cost of tiling put in by appellee, under the stipulation of the parties.

The decree of the lower court will be modified in accord-

ance with this opinion, and otherwise affirmed.  The appellee will pay the costs of the appeal.—*Modified and affirmed.*

Arthur, C. J., Stevens and De Graff, JJ., concur.